**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Raymond Gastelo,<br><br>        Plaintiff,<br><br>v.<br><br>Wesco Insurance Company, et al.,<br><br>        Defendants. | No. CV-18-02659-PHX-MTL<br><br>**ORDER** |

     In this case the Plaintiff, Raymond Gastelo, claims that the Defendants wrongfully withheld worker's compensation benefits after he was injured on the job. Presently before the Court are the following Motions: (1) Motion to Dismiss Plaintiffs' Complaint as to Defendant Pam Greer (Doc. 40); (2) Plaintiffs' Motion for Partial Summary Judgment on Liability for Bad Faith Against Wesco Insurance Company (Doc. 51); and (3) Defendants' Motion for Summary Judgment (Doc. 49).[1] The motions are denied.

## I. FACTUAL BACKGROUND

     On November 14, 2015, Mr. Gastelo sustained injuries after he fell approximately 22 feet from a ladder while working at a jobsite. He was hospitalized for about a week, during which he was treated for injuries to his head, back, left side, and left leg. At this time he experienced, but was not treated for, pain in his left shoulder.

     Within days of his fall, Mr. Gastelo filed a worker's compensation claim with his

---

[1] The Court believes that oral argument would not significantly aid the decisional process. *See* Fed. R. Civ. P. 78(b) (court may decide motions without oral hearing); LRCiv 7.2(f) (same).

employer's worker's compensation insurer, Defendant Wesco Insurance Company. Amtrust North America, also a defendant in this case, served as the administrator for Wesco on this claim. Defendant Pam Greer was employed by Amtrust as the adjuster. Wesco also assigned a nurse case manager to the claim.

On January 26, 2016, Mr. Gastelo sent an email to Ms. Greer reporting that:

> While I was in the hospital, my left shoulder was in pain. But nobody looked at it, I thought it was just sor[e]ness. But the pain still ex[]ists, . . . [the] last week of December I brought [it] to the attention of Michelle[, the nurse care manager]. And today Michelle told me to contact you. Michelle is recommend[ing] a doctor Baile.

(Doc. 52-1 at 80.)

Ms. Greer did not respond to this email, so Mr. Gastelo sent another unanswered one later in January. He sent a third in February. Ms. Greer responded to that email by instructing him to go see a doctor. Mr. Gastelo saw Dr. David Baillie on September 6, 2016 and was diagnosed with a left rotator cuff tear. Dr. Baillie noted in the record that, "I think this is part of his industrial injury. I am unclear as to why it took this long for him to be evaluated. This is a very unfortunate situation as this could have lead to a[] non-repairable tear." (Doc. 52-1 at 88.)

Mr. Gastelo sent two emails to Ms. Greer in late September, 2016 to discuss Dr. Baillie's assessment. Ms. Greer did not respond to either one. On October 1, 2016, Mr. Gastelo filed a request for a hearing with the Industrial Commission of Arizona wherein he sought to submit a claim for his shoulder injury. In his filing, Mr. Gastelo stated that, "my case manager will not answer E-mail and phone calls from myself or Dr. Bailie's [sic] office. I have brought my injury to my case manager back in January." (Doc. 52-2 at 8.)

On October 4, 2016, Ms. Greer responded to the last email from Mr. Gastelo in the chain – the one dated September 23, 2016 –and instructed Mr. Gastelo to "[m]ake an appointment and go see the doctor." (Doc. 52-1 at 82.) Within a few hours, Mr. Gastello responded, "I have already seen a doctor[,] Dr. Bailey [sic] . . . . They took X-Rays which

I paid out of my pocket. Dr Bailey [sic] wants to proceed with MRI but needs you to call their office to get an ok. [T]hank you very much." (*Id*.) The next day, October 5, Ms. Greer and Mr. Gastelo exchanged emails in which Mr. Gastelo reported that he had not yet received a call approving his MRI. Not yet having an answer, on October 14, 2016, Mr. Gastelo again emailed Ms. Greer requesting that she call his doctor and confirm that Wesco "will cover doctors visits," including the MRI that was scheduled for that day. (*Id*.) Ms. Greer did not respond.

Nearly two months later, in early December, the nurse care manager asked Ms. Greer to approve Mr. Gastelo's shoulder surgery. The claim notes show the following entry by Ms. Greer:

> Received call from Michelle . . . seeking approval for shoulder surgery. Review of file found claimant reported injury to his left leg, thigh, broken hip and gash over left eye. There is no mention of shoulder. I explained that all treatment has been to the leg, thigh, hip and gash over left eye. Claimant never received treatment for his shoulder. According to Michelle, the claimant stated he mentioned it a couple of times and no one treated his shoulder. No authorization given as claim is over a year old and he is now complaining of shoulder pain?

(Doc 52-1 at 57.)

Ms. Greer denied the shoulder injury claim on December 6, 2016. (Doc. 52-1 at 56.) The claim notes indicate that, on January 3, 2017, Ms. Greer was put on notice that Mr. Gastelo's claim may have been denied in error. (Doc. 52-2 at 55.) A few days later, Ms. Greer requested that Mr. Gastelo submit to an independent medical examination in order to determine if the injury was related to the workplace accident. (*Id*.) In May 2017, Ms. Greer logged a claims notation that she "discovered in medical records that shoulder was mentioned although he never received treatment." (Doc. 52-1 at 3.) Ms. Greer re-opened the file. Mr. Gastelo attended an independent medical examination in August 2017 which resulted in a recommendation that he receive physical therapy and injections.

Mr. Gastelo underwent shoulder surgery on April 5, 2018. Following that, his

surgeon placed him on a work restriction that entitled him to an income benefit under the worker's compensation policy. Not having received a payment by the 25th of April, Mr. Gastelo's attorney contacted Wesco. There was no response. The attorney then filed an administrative bad faith and unfair processing claim with the Industrial Commission of Arizona. The claim noted that, "42 days after surgery, the carrier has yet to pay any temporary total compensation." (Doc. 52-2 at 21.) Wesco's response opposing the administrative claim contended that, "[i]t was not until September 2016, ten months after the date of injury, that [he] made reference to complaints regarding his left shoulder." (Doc. 52-2 at 25.) The response also claimed that "the delay resulted from [Mr. Gastelo's] failure to report the shoulder, and his failure to report the shoulder is evidence that the alleged traumatic tear to the shoulder is not causally related to the subject fall."[2] (*Id.*) Wesco finally issued Mr. Gastelo's income benefit check on July 9, 2018, representing a 95-day time lapse between his surgery and payment. (Doc. 52-1 at 197.)

Mr. Gastelo initiated this lawsuit claiming that the Defendants here "individually and/or collectively, have engaged in conduct that wrongfully denied and/or unreasonably delayed payment of workers' compensation benefits for workplace injuries . . . ." (Doc. 1 at ¶ 8.) The Complaint alleges the following four claims for relief: (1) breach of the duty of good faith and fair dealing against Defendants Wesco and Amtrust North America; (2) aiding and abetting Wesco's breach of the duty of good faith and fair dealing against Defendant Amtrust North America; (3) aiding and abetting Wesco's and Amtrust North America's duty of good faith and fair dealing against Ms. Greer; and (4) punitive damages against all defendants.

## III. ANALYSIS

### A. Motion to Dismiss

The Court may dismiss a complaint for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P., if it fails to assert a cognizable legal theory or if it fails to allege sufficient

---

[2] On September 19, 2018, the Industrial Commission issued an award in Mr. Gastelo's favor, concluding that Wesco had acted in bad faith. Wesco had "demonstrated delays in authorizing medical treatment, in spite of having evidence relating the shoulder to the industrial injury as early as September 6, 2016." (Doc. 52-1 at 74-75.)

facts to support a recognized claim for relief. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In deciding a motion to dismiss under Rule 12(b)(6), the Court must construe the well-pled facts alleged in the complaint as true. *Shwarz v. United States*, 234 F.3d 428, 436 (9th Cir. 2000).

The Complaint alleges aiding and abetting tort liability against Ms. Greer and a punitive damage claim against all three defendants. The Motion to Dismiss (Doc. 40) asks that the Court dismiss the aiding and abetting and punitive damages claims against Ms. Greer. The Motion argues that the Complaint defectively incorporates the same alleged misconduct as a basis for liability against Greer and the Wesco/Amtrust defendants.

"[F]ederal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law." *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003). Under Arizona law, the elements of an aiding and abetting claim are:

> (1) the primary tortfeasor must commit a tort that causes injury to the plaintiff;
>
> (2) the defendant must know that the primary tortfeasor's conduct constitutes a breach of duty; and
>
> (3) the defendant must substantially assist or encourage the primary tortfeasor in the achievement of the breach.

*Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 485 (2002); *see also* Restatement (Second) Torts § 876(b) (adopted by the Arizona Supreme Court in *Wells Fargo Bank*, *supra*).

More specifically, "[t]he party charged with the tort must have knowledge of the primary violation, and knowledge may be inferred from the circumstances." *Temple v. Hartford Ins. Co. of Midwest*, 40 F. Supp. 3d 1156, 1170 (D. Ariz. 2014). Where an insurer delegates its claim handling responsibilities to an administrator and its adjuster, the "agent", i.e., the adjuster, "can be held liable for aiding and abetting an insurer's violation of the duty of good faith and fair dealing." *Id*.

Ms. Greer seeks dismissal because the Complaint rests Wesco's alleged misconduct

solely on Ms. Greer's conduct in handling Mr. Galesco's claim. While much of that is true, the Complaint does allege independent liability against Wesco for breach of the duty of good faith and fair dealing and punitive damages. In that regard, the Complaint alleges that Wesco, which was Mr. Galesco's employer's insurer and had a duty to pay legitimate claims, failed to do so when it did not timely approve upon his shoulder injury claim and pay his income benefits. (*E.g.*, Doc. 1 at ¶¶ 17-22.) The Complaint also sets forth allegations consistent with the aiding and abetting cause of action adopted by the Arizona Supreme Court. That is, Wesco was the insurer with the duty to make payments, its agent Ms. Greer had the requisite scienter, and that through her actions and inaction she provided substantial assistance or encouragement for Wesco's alleged breach. (Doc. 1 at ¶¶ 29-33.)

To summarize, the Complaint's theory of liability against Wesco is that it had the duty to pay Mr. Galesco's well-taken insurance claims. It did not satisfy this duty. The Complaint further alleges that Ms. Greer, as the third-party adjuster, took steps and failed to take steps in furtherance of Wesco's failure to pay. The Complaint, therefore, states distinct claims against Ms. Greer. The Motion to Dismiss (Doc. 40) is denied.

### B. Cross-Motions for Summary Judgment

Plaintiff moves for summary judgment against Wesco for breach of the duty of good faith and fair dealing. (Doc. 53.) Defendants move for complete summary judgment. (Doc. 49.) Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At the summary judgment stage, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (internal citations omitted); *see also Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994) (court determines whether there is a genuine issue for trial but does not weigh

the evidence or determine the truth of matters asserted).

### 1. Breach of Good Faith and Fair Dealing

Arizona law imposes on insurers a duty of good faith and fair dealing that applies to their insureds and to third party claimants. *Rawlings v. Apodaca*, 151 Ariz. 149, 154-55 (1986). This duty, and the potential liability exposure, exists in the domain of workers' compensation insurance contracts. *Merkens v. Federal Ins. Co.*, 237 Ariz. 274, 276 (App. 2015). Workers who are injured on the job also have separate administrative remedies available from the Industrial Commission of Arizona.

Bad faith insurance practices cover situations where an insurer intentionally and unreasonably denies a claim or where it intentionally and unreasonably fails to process, handle, or pay a claim. *Demetrulias v. Wal-Mart Stores, Inc.*, 917 F. Supp. 2d 993, 1004 (D. Ariz. 2013). The test for bad faith requires that a court conduct a two-part analysis. "First is the objective inquiry: did the insurer act unreasonably toward the insured? Second is the subjective: did the insurer act knowingly or with reckless disregard as to the reasonableness of its actions?" *Id.* (citation and internal quotation marks omitted).

The objective inquiry is satisfied based on insurer's "failure to immediately conduct an adequate investigation, failure to act promptly in paying a legitimate claim, forc[ing] an insured to go through needless adversarial hoops to achieve its rights under the policy, lowball[ing] claims, and similar conduct." *Id.* (quoting *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 196 Ariz. 234, 238 (2000)) (internal quotation marks omitted). Here, Mr. Gastelo has presented material facts of Defendants' objectively unreasonable behavior. For example, he has pointed to Ms. Greer's multiple failures to promptly respond to his requests to authorize his shoulder treatment; despite his multiple communications, Ms. Greer questioned the veracity of the claim ("No authorization given as claim is over a year old and he is now complaining of shoulder pain?"); Mr. Gastelo was required to file a claim with the Industrial Commission to prompt Defendants into action; and Wesco delayed paying Mr. Gastelo's income benefits by 95 days after his shoulder surgery. Mr. Gastelo therefore satisfies the objective inquiry.

The second inquiry requires an examination of the insurer's subjective intent. In order to survive summary judgment, a plaintiff must show that the defendants' conduct exceeds mere negligence. "The 'intent' required here is an 'evil hand' to do the act. . . . [T]he insurer must intend the act or omission and must form that intent without reasonable or fairly debatable grounds." *Id.* at 1005 (quoting *Rawlings*, 151 Ariz. at 160.) The facts of this case present a close call between what can be described as Ms. Greer's negligence in handling this claim and the "evil hand" standard articulated in *Rawlings*. Defendants' explanation that Ms. Greer's failure to process the shoulder injury claim was the result of a serious personal medical condition is a strong one. After all, *Rawlings* recognizes that, "[i]nsurance companies, like other enterprises and all human beings, are far from perfect. Papers get lost, telephone messages misplaced and claims ignored because paperwork was misfiled or improperly processed." 151 Ariz. at 157. Such misconduct may constitute a breach of contract; however, it does not necessarily expose the insurer to bad faith liability. *Id.* Defendants have, in this regard, presented enough facts to preclude summary judgment in favor of Mr. Gastelo. A reasonable jury can identify Defendants' non-actionable negligence as the source of the claims processing misunderstandings and delays.

But a satisfactory end-result did take a very long time and a great deal of effort on Mr. Gatelo's part. "Intent is established when an insurer lacked a founded belief that its conduct was permissible. The founded belief is absent when the insurer either knows that its position is groundless or when it fails to undertake an investigation adequate to determine whether its position is tenable." *Demetrulias*, 917 F. Supp. 2d at 1005 (quoting *Rawlings*, 151 Ariz. at 160) (internal quotation marks and citation omitted). Based on the timeline of facts, a reasonable jury could reach a conclusion that Ms. Greer acted with deliberate indifference to the shoulder injury claim. A jury can also conclude, regardless of her personal medical situation, that she intentionally failed to engage in an adequate investigation each of the many times that Mr. Gastelo contacted her. For example, Mr. Gastelo was forced to engage in a vigorous email campaign simply to get Ms. Greer to give

his claim attention. Mr. Gastelo was diligent in reporting his shoulder pain to the nurse care manager. He followed through with her request to contact Ms. Greer. Medical professionals and the Industrial Commission all concluded that his injury was related to the fall. Also, relevant here is that, even after Defendants had realized that Ms. Greer overlooked Mr. Gastelo's initial January 2016 email notice of his injury, they continued to press the argument with the Industrial Commission that *he* was solely at fault for the delay.

Concerning the delay in paying the post-shoulder-surgery income benefits, lost income, even for a short amount of time, can be of significant consequence to someone in Mr. Gastelo's position. Here, Mr. Gastelo was without his income benefit for 95 days. Based on a two-week pay cycle, this amounts to almost 7 pay periods. A reasonable jury can find bad faith because attorney communications an administrative complaint were necessary to prompt Defendants to pay benefits. For these reasons, Mr. Gastelo has satisfied his burden to defeat summary judgment in favor of Defendants.

### 2. Punitive Damages

Defendants seek summary judgment in their favor on Plaintiff's punitive damages claim. They argue that Mr. Gastelo has not adduced any facts to satisfy his burden to take this issue to the jury. It was recognized in *Temple v. Hartford Insurance Company*, that an award of punitive damages requires satisfying one of the following three factors by clear and convincing evidence:

> that [the] [d]efendant either (1) intended to cause injury; (2) engaged in wrongful conduct motivated by spite or ill will; or (3) acted to serve its own interests, having reason to know and consciously disregarding a substantial risk that its conduct might significantly injure the rights of others, even though defendant had neither desire nor motive to injure.

40F. Supp. 3d at 1171.

At the summary judgment stage, the evidence, and all reasonable inferences drawn from the evidence, must be viewed in a light most favorable to the non-moving party. *Temple*, 40 F. Supp. 3d at 1171; *accord Anderson*, 477 U.S. at 248. While this is another close call, the Court ultimately finds that a reasonable jury can arrive at more than one

basis for awarding punitive damages. A reasonable jury can conclude that the evidence of Defendants' failure to properly handle Mr. Gastelo's shoulder injury claim satisfies the third punitive damages factor. That same jury can conclude that the evidence of Defendants' delays in responding to and paying Mr. Gastelo's income benefits satisfies the second and third factors. For these reasons, Defendants' Motion for Summary Judgment on the punitive damages claim is denied.

## V. CONCLUSION

Accordingly,

**IT IS ORDERED** denying the Motion to Dismiss (Doc. 40);

**IT IS FURTHER ORDERED** denying the Cross-Motions for Summary Judgment (Docs. 49 and 51).

**IT IS FINALLY ORDERED** setting a telephonic trial-setting conference for **Tuesday, April 21, 2020, at 9:30 a.m.** The parties are directed to jointly call the Court at (602) 322-7655 at the time set for the hearing.

Dated this 18th day of March, 2020.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge